915 A.2d 59

LEO FACTO AND ELIZABETH FACTO, PLAINTIFFS–APPEL-
LANTS, v. SNUFFY PANTAGIS, PANTAGIS RENAISSANCE
AND SNUFFY PANTAGIS ENT., INC., DEFENDANTS–RE-
SPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 20, 2006—Decided January 29, 2007.

Before Judges SKILLMAN, LISA and HOLSTON, JR.

*Christopher J. Poulos* argued the cause for appellants (*Mintzer Sarowitz Zeris Ledva & Meyers,* attorneys; *Mr. Poulos,* on the brief).

*Michael E. Panagos* argued the cause for respondents.

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

This is a breach of contract action arising out of the cancellation of a wedding reception due to a power failure.

Plaintiffs contracted with defendant Snuffy Pantagis Ent., Inc., t/a Pantagis Renaissance, a banquet hall in Scotch Plains, for a wedding reception for 150 people, to be held between 6 p.m. and 11 p.m. on Saturday, August 3, 2002. The total contract price was $10,578, all of which was to be paid in advance. The contract contained a *force majeure* clause, which stated: "Snuffy's will be excused from performance under this contract if it is prevented from doing so by an act of God (e.g., flood, power failure, etc.), or other unforeseen events or circumstances."

Less than forty-five minutes after the reception began, there was a power failure in the area where the *Pantagis Renaissance* is located. At the time, plaintiffs were in an upstairs room with the bridal party, and their guests were downstairs being served alcoholic beverages and hors d'oeuvres. The power failure caused all the lights, except emergency lights, to go out and the air conditioning system to shut off. In addition, the band plaintiffs had hired for the reception refused to play without lights or the electricity required to operate their instruments, and the lack of lighting impeded the wedding photographer and videographer from taking pictures.

On the day of the reception, the temperature was in the upper 80s or low 90s and the humidity was high. As a result, plaintiffs and their guests became extremely uncomfortable within a short time after the power failure. According to plaintiffs, some of the guests resorted to pouring water over their heads to keep cool.

When it became evident that electricity would not be restored quickly, the manager of the Pantagis Renaissance offered to reschedule the reception. However, many of plaintiffs' guests had traveled a substantial distance to attend the wedding and would not have been able to return on another date. Therefore, plaintiffs declined the offer.

There was some dispute regarding the services provided after the power failure. Plaintiffs testified that the Pantagis Renaissance stopped serving alcoholic beverages around 7:30 p.m. and that the only food it served in addition to hors d'oeuvres was salad. However, the banquet hall's general manager testified that the facility continued to serve alcoholic beverages until after 9 p.m. and that it served plaintiffs and their guests salad and pasta and started to serve them dinner.

Shortly after 9 p.m., there was some kind of altercation between one of plaintiffs' guests and an employee of the Pantagis Renaissance. As a result, the banquet hall called the police, who arrived around 9:30 p.m. By this time, the batteries operating the emergency lights had begun to run out of power, and the only illumina-

tion was provided by candelabras on the tables. Therefore, the manager of the Pantagis Renaissance asked the police to evacuate the facility, which was then occupied not only by plaintiffs and their guests but also the attendees at four other wedding receptions.

Plaintiffs subsequently brought this breach of contract action seeking recovery of the $10,578 they prepaid for the wedding reception plus the $6,000 paid to the band, $3,810 paid to the wedding photographer and $3,242.09 paid to the videographer. Plaintiffs' complaint also asserted a negligence claim.

The case was tried in a half-day bench trial. The trial court concluded in a brief oral opinion that plaintiffs' breach of contract claim was barred by the *force majeure* clause of the contract because the power failure was an "unusual extraordinary unexpected circumstance" that could not be avoided by "reasonable human foresight." The court dismissed plaintiffs' negligence claim on the ground there was no evidence the Pantagis Renaissance was responsible for the power failure or failed to take reasonable measures to respond to this unforeseen circumstance. Accordingly, the court entered judgment dismissing plaintiffs' complaint.

On appeal, plaintiffs challenge the dismissal of both their negligence and contract claims. Plaintiffs' arguments in support of their negligence claim are clearly without merit and do not warrant extended discussion. *R.* 2:11–3(e)(1)(E). Plaintiffs failed to present any evidence that could support a finding that defendants were negligent. Moreover, even if defendants had been negligent, their liability for failure to perform the contract would still be governed solely by the law of contracts. *See Saltiel v. GSI Consultants, Inc.,* 170 *N.J.* 297, 309–10, 788 *A.*2d 268 (2002).

Plaintiffs' contract claim presents more difficult issues. We agree with the trial court's conclusion that the power failure relieved the banquet hall of the obligation to provide plaintiffs with a wedding reception. Therefore, the banquet hall's failure to perform the contract due to the absence of electricity did not

constitute a breach. But even though there was no breach, the banquet hall's inability to perform the contract also relieved plaintiffs of their obligation to pay the contract price. Consequently, plaintiffs are entitled to recovery of the $10,578 they prepaid the banquet hall, less the value of the services they did receive.

Even if a contract does not expressly provide that a party will be relieved of the duty to perform if an unforeseen condition arises that makes performance impracticable, "a court may relieve him of that duty if performance has unexpectedly become impracticable as a result of a supervening event." *Restatement (Second) of Contracts* § 261 cmt. a (1981); *see M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 171 *N.J.* 378, 390–91, 794 *A.*2d 141 (2002). In deciding whether a party should be relieved of the duty to perform a contract, a court must determine whether "the existence of a specific thing is necessary for the performance of a duty" and "its ... destruction, or ... deterioration ... makes performance impracticable[.]" *Restatement (Second) of Contracts* § 263 (1981); *see Brauer v. Hyman*, 98 *N.J.L.* 743, 746, 121 *A.* 667 (E. & A.1923). As explained in *Corbin:* "If the contract contains no words of express condition to either party's duty of performance, the court may have to fill the gap and determine whether the continued availability of certain means of performance should be deemed a constructive or implied condition." 14 *Corbin on Contracts* § 75.7 (Perillo rev.2001). One court has recognized that even in the absence of a *force majeure* clause, a power failure is the kind of unexpected occurrence that may relieve a party of the duty to perform if the availability of electricity is essential for satisfactory performance. *See Opera Co. of Boston, Inc. v. Wolf Trap Found. for Performing Arts*, 817 *F.*2d 1094 (4th Cir.1987) (power failure that prevented safe performance of concert).

■ A *force majeure* clause, such as contained in the Pantagis Renaissance contract, provides a means by which the parties may anticipate in advance a condition that will make performance impracticable. *See 8 Corbin on Contracts* § 31.4 (Perillo rev.

1999). Such a clause conditions a party's duty to perform upon the non-occurrence of some event beyond its control and serious enough to interfere materially with performance. *Ibid.*

A *force majeure* clause must be construed, like any other contractual provision, in light of "the contractual terms, the surrounding circumstances, and the purpose of the contract." *Marchak v. Claridge Commons, Inc.,* 134 *N.J.* 275, 282, 633 *A.*2d 531 (1993). When an unforeseen event affecting performance of a contract occurs, such a clause will be given a reasonable construction in light of the circumstances. *See* 8 *Corbin, supra,* § 31.4.

The *force majeure* clause in the Pantagis Renaissance contract provided: "Snuffy's will be excused from performance under this contract if it is prevented from doing so by an act of God (e.g., flood, power failure, etc.), or other unforeseen events or circumstances." Thus, the contract specifically identified a "power failure" as one of the circumstances that would excuse the Pantagis Renaissance's performance. We do not attribute any significance to the fact the *force majeure* clause refers to a power failure as an example of an "act of God." This term has been construed to refer not just to natural events such as storms but to "comprehend[ ] all misfortunes and accidents arising from inevitable necessity which human prudence could not foresee or prevent[.]" *Meyer Bros. Hay & Grain Co. v. Nat'l Malting Co.,* 124 *N.J.L.* 321, 323, 11 *A.*2d 840 (Sup.Ct.1940); *see also* 14 *Corbin, supra,* § 74.4 (noting that "[t]he kinds of impossibility that [excuse performance under a contract] in many instances are caused by human beings, although the court might still refer to the event as an 'act of God.' "). Furthermore, the *force majeure* clause in the Pantagis Renaissance contract excuses performance not only for "acts of God" but also "other unforeseen events or circumstances." Consequently, even if a power failure caused by circumstances other than a natural event were not considered to be an "act of God," it still would constitute an unforeseen event or circumstance that would excuse performance.

The fact that a power failure is not absolutely unforeseeable during the hot summer months does not preclude relief from the obligation to perform. Indeed, even in the absence of a *force majeure* clause, absolute unforeseeability of a condition is not a prerequisite to the defense of impracticability. *See Opera Co. of Boston, supra,* 817 *F.*2d at 1100–01. The party seeking to be relieved of the duty to perform only needs to show that "the 'destruction, or . . . deterioration' of a 'specific thing necessary for the performance' of the contract 'makes performance impracticable.' " *Id.* at 1100 (quoting *Restatement (Second) of Contracts* § 263 (1981)). In this case, the Pantagis Renaissance sought to eliminate any possible doubt that the availability of electricity was a "specific thing necessary" for the wedding reception by specifically referring to a "power failure" as an example of an "act of God" that would excuse performance.

It is also clear that the Pantagis Renaissance was "prevented from" substantial performance of the contract. The power failure began less than forty-five minutes after the start of the reception and continued until after it was scheduled to end. The lack of electricity prevented the band from playing, impeded the taking of pictures by the photographer and videographer and made it difficult for guests to see inside the banquet hall. Most significantly, the shutdown of the air conditioning system made it unbearably hot shortly after the power failure began. It is also undisputed that the power failure was an area-wide event that was beyond the Pantagis Renaissance's control. These are precisely the kind of circumstances under which the parties agreed, by inclusion of the *force majeure* clause, that the Pantagis Renaissance would be excused from performance. Therefore, the trial court correctly concluded that defendants did not breach the contract.

■ However, the court erred in concluding that because defendants did not breach the contract, plaintiffs are not entitled to recover the money they prepaid for the wedding reception. Where one party to a contract is excused from performance as a

result of an unforeseen event that makes performance impracticable, the other party is also generally excused from performance. *Restatement (Second) of Contracts* §§ 237, 239, 267 (1981). As explained in *Corbin:*

> A promisor should not be compelled to give something for nothing. The parties agreed upon an exchange of performances, and an exchange cannot now take place. Even if not stated in express terms, the promisor's duty is constructively conditional on the return performance by the promisee. Even though the nonperforming promissee is not in default because the impossibility doctrine discharges the duty, it cannot demand something for nothing from the other party.
>
> [14 *Corbin, supra,* § 78.2.]

The same rule applies if a party to a contract is excused from performance by a *force majeure* clause that expressly sets forth certain categories of unforeseen events that will render performance impracticable. *See* 8 *Corbin, supra,* § 31.4 at 62. Therefore, the power failure that relieved the Pantagis Renaissance of the obligation to furnish plaintiffs with a wedding reception also relieved plaintiffs of the obligation to pay the contract price for the reception.

Nevertheless, since the Pantagis Renaissance partially performed the contract by starting the reception before the power failure, it is entitled, under principles of quantum meruit, to recover the value of the services it provided to plaintiffs. *See Shapiro v. Solomon,* 42 *N.J.Super.* 377, 383, 126 *A.*2d 654 (App. Div.1956) (noting that "where an express contract for work or services is abortive for ... impossibility, or invalidity for other reasons, the plaintiff not being at fault ... may have recovery for the value of his services[.]"); *see also Restatement (Second) of Contracts* § 272 (1981). The measure of damages is the benefit conferred upon the party against whom the quantum meruit claim is asserted. *See Wanaque Borough Sewerage Auth. v. Twp. of W. Milford,* 144 *N.J.* 564, 575, 677 *A.*2d 747 (1996).

Accordingly, the final judgment dismissing plaintiffs' complaint is reversed and the case is remanded to the trial court for further proceedings in conformity with this opinion.