**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2878-21

MARILYN RUKAJ,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

JERRY PUCCIO, INDIVIDUALLY
AND AS PROPRIETOR OF THE
ROCKLEIGH, GERRY PUCCIO JR.,
FRED PUCCIO, AND ROCKLEIGH
COUNTRY CLUB LLC.,

    Defendants-Respondents/
    Cross-Appellants.

_____

Submitted October 25, 2023 – Decided July 12, 2024

Before Judges Gummer and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3516-20.

O'Brien Thornton LLC, attorneys for appellant/cross-respondent (Merrill M. O'Brien, on the briefs).

Newman & Denburg LLC, attorneys for respondents/cross-appellants (Gary S. Newman, of

counsel and on the briefs and David F. Scheidel II, on the briefs).

PER CURIAM

In this breach-of-contract dispute, plaintiff Marilyn Rukaj sued defendants for the return of a $50,000 wedding deposit. Plaintiff appeals from: a March 18, 2021 order granting partial summary judgment in favor of defendants dismissing her Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20 claim; an August 6, 2021 order denying her motion for leave to amend her complaint to add three additional counts alleging violations of the CFA, an August 27, 2021 order dismissing the remaining counts in her complaint, and a May 13, 2022 order denying her motion for attorney's fees following the dismissal of defendants' counterclaims for defamation and slander per se. Defendants cross-appeal from the March 18, 2021 order granting partial summary judgment in favor of plaintiff on her breach of contract claim and ordering the return of plaintiff's $50,000 deposit. Having reviewed the record, the parties' arguments, and applicable law, we affirm each of the court's orders.

Defendants include Jerry Puccio, individually and as proprietor of the Rockleigh, Gerry Puccio, Jr., Fred Puccio, and Rockleigh Country Club, LLC (RCC). RCC owns and operates the banquet and catering facility known as The Rockleigh. In early 2019, prior to the start of the COVID-19 pandemic, plaintiff

and The Rockleigh entered into an Event Contract for plaintiff to have her wedding and reception for 225 guests at RCC on June 20, 2020. The total contract price was $68,000.63, and plaintiff paid a $50,000 deposit. The Contract provided in pertinent part that "[t]his [a]greement may not be changed, supplemented, or modified unless it is done in writing."

Pertinent to this appeal are Paragraphs 6 and 8 of the Contract. Paragraph 6 provided that The Rockleigh "shall not be liable to the client due to reasons beyond the control of management, including floods, fire, strikes, accidents, weather, emergency response situations, and any other reason that is not in the direct control of [] [RCC]." Paragraph 8 provided that plaintiff would forfeit the initial deposit "[i]n the event that [she] cancels, repudiates, or otherwise breaches this Contract by any cause or reason whatsoever."

The COVID-19 pandemic hit in early 2020, prompting Governor Philip D. Murphy to issue a series of Executive Orders (EOs) aimed at stopping the spread of the COVID-19 virus. On March 16, 2020, the Governor issued EO 104, which, in relevant part, limited "[a]ll gatherings of persons in the State of New Jersey to [fifty] persons or fewer, excluding normal operations at airports, bus and train stations, medical facilities, office environments, factories,

assemblages for the purpose of industrial or manufacturing work, construction sites, mass transit, or the purchase of groceries or consumer goods."

On March 21, 2020, the Governor issued EO 107 further restricting New Jersey residents from leaving their homes. In addition to ordering residents to remain in their homes until further notice, EO 107 also, in relevant part, canceled "[g]atherings of individuals, such as parties, celebrations, or other social events," required the closure of "brick-and-mortar premises of all nonessential retail businesses," and mandated the closure of "[a]ll recreational and entertainment business" including RCC. In response, RCC closed its venue pending further order from the Governor.

In the months leading up to plaintiff's scheduled wedding date, the parties exchanged a number of communications to determine whether defendants could proceed with plaintiff's 225-guest event. On May 22, 2020, plaintiff emailed an employee of The Rockleigh, Michael Subarsky, stating: "I am writing as a follow up to our telephone conversation today. I have confirmed with all my vendors that they are all ready, willing and able to perform the services . . . I need to know if [RCC] is ready, willing and able to provide the venue and services as contracted for."

4 <span>A-2878-21</span>

Plaintiff requested "a formal and final determination" on whether or not they could perform their obligations under the Contract "and . . . [RCC's] ability to provide full services, in the room and at full capacity as agreed." On May 27, 2020, Fred Puccio responded:

> [W]e are more than ready, willing, and able to perform on your original date under our contract. . . . [I]f you choose to move forward with your original date we will perform and will additionally provide you with some additional space to assist with social distancing which is your responsibility. Please be advised that adhering to social distancing guidelines during your event . . . will also remain your responsibility. [RCC] will provide PPE for all its employees but will not be responsible if a third party shuts down your event.

On this same date, plaintiff responded:

> While you confirmed that you were ready, willing and able to perform under our original date, the legality aspect of being "able" was not addressed. . . . [W]e were primarily concerned about whether a gathering of at least 225 people would be legal. . . . Please be advised that [paragraph] 1 of our [a]greement . . . bars any changes to the [a]greement unless modified in writing and consented to by the parties. To be clear, we are not consenting to any change, revision, or amendment to the [a]greement. . . . While you may be able to perform with such social distancing guidelines, performance in violation of the Governor's executive orders would be illegal and could not be performed under the contract. . . . We believe that if you become aware of sufficient and credible information that would give us notice that the wedding will not be barred by any law, rule, [EO], or any public policy by May 30th,

5

2020 . . . we would have no problem in moving forward with the event. . . . Should you be unable to secure such information we would expect a full refund.

On June 5, 2020, counsel for defendants wrote to plaintiff, stating:

[Y]our Contract with [RCC] governs the rights and duties of the parties. I encourage you to read it in its entirety—not just portions of it. In doing so you will realize that [] [RCC] is not responsible if unrelated third parties interfere with your event. Your previous question was whether [] [RCC] was ready willing and able to perform and the answer is they are. . . . They cannot guarantee the police will not shut down your event in the middle of the event.

[RCC] [is] more than happy to work out an amicable resolution but absorbing 100% of the loss when they are not responsible and [are] ready [,] willing and able to perform is not one of them.

On June 9, 2020, the Governor issued EO 152, which eased restrictions imposed by EO 107 and permitted limited indoor gatherings to: "[twenty-five percent] of the capacity of the room in which it takes place, but regardless of the capacity of the room, such limit shall never be larger than [fifty] persons or smaller than [ten] persons[.]"[1]

---

[1] During the argument on the summary-judgment motion, RCC contended that EO 152, effective on June 9, 2020, replaced EO 107 "such that RCC could legally perform the event [p]laintiff cancelled." EO 152 provided for certain businesses including RCC, and banquet facilities to reopen with restrictions on the number of person who could gather indoors. Specifically, it limited indoor

On the same date, counsel for plaintiff sent a letter to counsel for defendants, asserting that the Contract "expressly states that the agreement is contingent on the ability of [RCC] . . . to perform. Because the present law prohibits [RCC] from performing, [RCC] must issue our client a full refund[.]"

Plaintiff requested a refund of the entire deposit she had paid to RCC for the venue and services. When RCC failed to issue the refund, plaintiff commenced this action in the Law Division alleging a violation of the CFA (count one), intentional and negligent breach of a constructive trust (counts two and three), breach of contract (count four), and malicious refusal to return unearned payments in breach of the implied covenant of good faith and fair dealing (count five).[2] Defendants answered the complaint, and RCC and Fred Puccio asserted counterclaims for breach of contract (count one), slander per se

gatherings to "[twenty-five percent] of the capacity of the room in which it takes place, but regardless of the capacity of the room, such limit shall never be larger than [fifty] persons or smaller than [ten] persons[.]"

[2] The allegations in plaintiff's complaint are alleged against all defendants named in the complaint and make no distinction between the separate defendants.

A-2878-21

(count two), and defamation (count three), citing to derogatory social media posts it claimed plaintiff had made.[3]

After a period of discovery, plaintiff moved for partial summary judgment on her breach of contract claim and dismissal of defendant's counterclaim for breach of contract. Defendants opposed and cross-moved for summary judgment dismissing plaintiff's CFA claim. The court heard argument on the cross motions and on March 18, 2021, entered two concurrent orders along with its written statements of reason.

The court granted plaintiff's motion for partial summary judgment on the breach of contract claim and ordered defendants to return her $50,000 deposit, finding defendants were unable to perform under the Contract "because of [COVID-19] and Governor Murphy's Executive Orders." Relying on our decision in Facto v. Pantagis, 390 N.J. Super. 227, 234 (App. Div. 2007), the court also determined the COVID-19 pandemic constituted a "force majeure" which relieved both parties of their duty to perform under the Contract.[4]

_____

[3] RCC cross-claimed against Hartford Insurance Group for indemnification and contribution based on an insurance policy Hartford had issued to RCC. The cross-claim is not at issue in this appeal.

[4] In Facto, the parties signed a contract for a wedding reception at a banquet hall owned by the defendant. Id. at 228. The wedding reception was forced to

A-2878-21

Specifically, the court found plaintiff did not breach the Contract by notifying defendants the original event date could not be honored as a result of restrictions limiting indoor gatherings because "[t]he initial contract . . . contemplated that all of plaintiff's guests would be in the same room, an occurrence defendant[s] could not guarantee."

The court also found plaintiff's failure to renegotiate a later date for her event did not constitute a breach because nothing in the Contract "compelled either side to agree on a subsequent date." The court rejected defendants' argument they were entitled to recover under a quantum merit theory because "[n]o specific expenses unique to the planned event (in identification, in cost, and when the expenses were incurred) were brought to the court's attention" and it was not sufficient for defendants to "merely state that meetings were held

___

end early due to a power outage. The plaintiffs filed a breach of contract action against the defendant for the return of their deposit. Id. at 228-30. In dismissing the plaintiffs' claims, the trial court found that the plaintiffs' breach of contract claim was barred by the force majeure clause in the contract, finding the defendant's performance had been excused because the power outage constituted an unforeseen event "that could not be avoided by reasonable human foresight." Id. at 230 (internal quotations omitted). We reversed and remanded the case, holding that the "court erred in concluding that because the defendant did not breach the contract, the plaintiffs are not entitled to recover the money they prepaid for the wedding reception." Id. at 233. Accordingly, we held the power outage was a force majeure event excusing the parties' contractual performance and the plaintiffs were not obligated to pay the entire contract amount for the wedding reception. Id. at 234.

concerning [the] reception as those meetings occur regularly in the catering business."

The court granted defendants' motion for partial summary judgment dismissing plaintiff's CFA claim, finding she had failed to "describe a potential or prima facie CFA violation, with aggravating circumstances resulting in any ascertainable loss." At the outset of the court's statement of reasons, it emphasized that "the crux of this case involves plaintiff's attempt to recover [her] reception deposit, nothing else." The court did not find evidence that defendants had negotiated in bad faith once it became clear they could not perform under the Contract. Rather, the court found the parties could not amicably renegotiate the Contract and disagreed over how much money was owed to plaintiff.

The court also rejected plaintiff's allegation that defendants' offer to move the date of her event or reduce the size were deliberate attempts to induce plaintiff and her guests to "violate the executive order in place and expose themselves to the virus or to wrongfully retain plaintiff's deposit." Instead, the court concluded her allegations were based on her subjective perceptions of defendants' representations and were unsupported by the record.

Following the court's disposition of the parties' cross-motions for summary judgment, plaintiff filed a writ of execution to enforce the court's March 18, 2021 order. In response, defendants filed an order to show cause (OTSC) to stay the return of the $50,000 deposit and sought summary dismissal of the remaining three counts of plaintiff's complaint. The court then entered a second order requiring defendants to pay the $50,000 judgment as previously ordered. On June 21, 2021, defendants reimbursed plaintiff her $50,000 deposit.

On June 23, 2021, plaintiff moved to amend her complaint to add three additional counts alleging additional CFA violations and add defendants' counsel as a named party.[5] Plaintiff claimed her motion "incorporated further newly discovered facts" from two documents she alleged defendants had improperly withheld during discovery.[6] On July 21, 2021, defendants moved

_____

[5] In the proposed count six, plaintiff alleged defendants had conspired to violate N.J.S.A. 56:8-2 in the performance of services offered to plaintiff. Count seven, against defendant Fred Puccio, alleged a violation of N.J.S.A. 56:8-2 in the performance of the services offered to plaintiff as to defendant Fred Puccio and defendants' counsel Gary Newman and Newburg & Denburg, LLC, respectively.

[6] Plaintiff alleged the two documents were requested in her December 2, 2020 request for production of documents. Defendants did not respond to the request until March 17, 2021. The first document was an announcement posted on defendants' business website addressed to the public about its plans to accommodate previously scheduled wedding events, which plaintiff maintains indicated defendants' intent to comply with ongoing COVID-19 restrictions

under Rule 4:6-2(e) to dismiss the remaining three counts in plaintiff's complaint alleging intentional and negligent breach of constructive trust (counts two and three), and malicious refusal to return unearned payments in breach of the implied covenant of good faith and fair dealing (count five).

The court denied plaintiff's motion to amend her complaint in an order and written statement of reasons dated August 6, 2021. The court found the motion procedurally and substantively flawed because it was: untimely, having been filed approximately one year after the complaint and after the end of the second discovery end date; submitted without a motion for an extension of discovery; and lacked merit.

The court concluded plaintiff's "perception of adversary counsel's [May 13, 2020] letter to [] [RCC's] insurance carrier in a different case, as being inconsistent with [RCC's] factual position in this case, relative to the scope of one (or more) executive order(s), is subjective in nature. The issues were [and] are not identical[.]"

---

pursuant to Executive Orders restricting public gatherings. The second document was a letter from defendant RCC to its insurer—Hartford Insurance Group—in connection with its then-pending COVID-19 business interruption suit against Hartford.

A-2878-21

On August 27, 2021, following oral argument, the court granted defendants' motion to dismiss the remaining three counts in plaintiff's complaint. The court rendered its opinion from the bench finding, "[c]onstructive trusts are not a cause of action. It is an equitable remedy if unjust enrichment exists. . . . There has to be a benefit conferred to the [d]efendant[s] . . . There is no constructive trust if the money is returned."

Following the court's August 27, 2021 order, plaintiff moved to dismiss defendants' defamation counterclaims, which the court granted in an order dated March 18, 2022. Plaintiff then sought attorney's fees related to her successful defense against defendants' counterclaims for defamation and slander per se arguing pursuant to Rule 1:4-8 and N.J.S.A. 2A:15-59.1 (the frivolous litigation statute) defendants' counterclaims were filed in bad faith. Defendants also crossed moved for an award of attorney's fees. The court heard argument and denied both motions in an order dated May 13, 2022. In denying plaintiff's motion for fees under Rule 1:4-8, the court concluded that "just because one party prevails doesn't mean they become frivolous, [] claims."

Both parties appealed.

## I.

We review a trial court's summary-judgment order de novo, applying the same standard as the trial court. Stewart v. N.J. Tpk. Auth., 249 N.J. 642, 655 (2022). We accord no deference to the trial court's legal conclusions. Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019). Rule 4:46-2(c), which guides our analysis, provides summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting R. 4:46-2(c)).

An issue is genuine if "the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c). In other words, if the "competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party[,]" then the movant is not entitled to summary judgment. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

## II.

Plaintiff argues the court erred in granting defendants' motion for partial summary judgment dismissing her CFA claim. Plaintiff claims the court erroneously limited its application of the CFA "only to the formation of a contract" and ignored defendants' "repeated representations that [they were] 'able' to perform the contracted for event[,]" which she alleges "were not only false in light of [EOs] prohibiting public indoor gathering[s] but made in bad faith[.]" Additionally, plaintiff avers the $50,000 deposit she paid "was wrongfully retained as a coercive device in an attempt to force [her] capitulation to an entirely different event or simply to pocket her money for the cancelled event[.]" Plaintiff further argues that combined, defendants' actions "constitute substantial aggravating circumstances sufficient to support a CFA claim for unconscionable practices."

Defendants maintain the "instant matter was nothing more than a simple contract dispute whereby the parties were contesting the allocation of loss on their written contract," and plaintiff failed to "provide a scintilla of evidence of the requisite ascertainable loss and aggravating circumstances required to prove a [CFA] claim." And defendants also argue a breach of contract is not per se unfair or unconscionable and does not violate the CFA. We are persuaded that

15

with the return of plaintiff's deposit, plaintiff suffered no ascertainable losses as required to sustain a CFA claim against defendants. Thus, we reject plaintiff's arguments and affirm the court's dismissal of plaintiff's CFA claim.

"The CFA provides a remedy for any consumer who has suffered an ascertainable loss of moneys or property as a result of an unlawful commercial practice and allows him or her to recover treble damages, costs, and attorneys [sic] fees." Heyert v. Taddese, 431 N.J. Super. 388, 411 (App. Div. 2013). The elements of a CFA claim are: (1) an unlawful practice, (2) an ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss. Lee v. Carter-Reed Co., 203 N.J. 496, 521 (2010). The CFA defines an "unlawful practice" as:

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby.
>
> [N.J.S.A. 56:13-21(a).]

"An 'unlawful practice' contravening the CFA may arise from (1) an affirmative act; (2) a knowing omission; or (3) a violation of an administrative

16

regulation." Dugan v. TGI Fridays, Inc., 231 N.J. 24, 51 (2017) (quoting Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 245 (2005)). "The language of the CFA specifically identifies a variety of affirmative acts, including 'deception, fraud, false pretense, false promise, [and] misrepresentation,' and it also identifies as actionable 'the knowing[] concealment, suppression or omission of any material fact,' if intentional[.]" Allen v. V & A Bros., Inc., 208 N.J. 114, 131, (2011) (alterations in original) (quoting N.J.S.A. 56:8-2).

To withstand a motion for summary judgment in a CFA action, plaintiff must make a showing of ascertainable loss attributable to unlawful conduct by defendant. Thiedemann 183 N.J. at 248. An ascertainable loss under the CFA is one that is "quantifiable or measurable, not hypothetical or illusory." Ibid. "In cases involving breach of contract or misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle and will set the stage for establishing the measure of damages." Ibid. (citing Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 13 (2004)) ("In an ordinary breach-of-contract case, the function of damages is simply to make the injured party whole. . . .").

17

Conduct constituting a breach of contract may present grounds for a CFA claim, but not invariably so. Cox v. Sears Roebuck & Co., 138 N.J. 2, 18 (1994). In that regard, our Supreme Court explained in Cox:

> In respect of what constitutes an "unconscionable commercial practice" . . . unconscionability is an amorphous concept obviously designed to establish a broad business ethic. The standard of conduct that the term "unconscionable" implies is lack of good faith, honesty in fact and observance of fair dealing. However, a breach of warranty, or any breach of contract, is not per se unfair or unconscionable [] and a breach of warranty alone does not violate a consumer protection statute. Because any breach of warranty or contract is unfair to the non-breaching party, the law permits that party to recoup remedial damages in an action on the contract; however, by providing that a court should treble those damages and should award attorneys' fees and costs, the Legislature must have intended that substantial aggravating circumstances be present in addition to the breach.
>
> [Ibid. (citations and internal quotation marks omitted).]

Applying the foregoing principles, we conclude there is insufficient evidence of substantial aggravating circumstances to support plaintiff's claim that defendants' actions in retaining her deposit—based on alleged misrepresentations about their ability to host her wedding and reception during the height of the COVID-19 pandemic—constituted unlawful conduct under the CFA. We are persuaded plaintiff failed to establish, through competent proofs,

18

that defendants negotiated in bad faith once it became clear RCC could not perform under the Contract. Brill, 142 N.J. at 529 (explaining insubstantial issues of fact based on assumptions or speculation are not enough to overcome summary judgment). Rather, the issue at hand is the parties' disagreement over how much money was owed to plaintiff under the Contract: whether defendants were entitled to retain any of the deposit and whether plaintiff's loss was "different and/or additional to the loss of the deposit money allegedly suffered due to the consumer contract breach."

We further conclude that even if plaintiff could establish defendants' conduct in retaining her $50,000 deposit was unlawful, plaintiff cannot meet the second element requiring proof of an ascertainable loss as a result of defendants' alleged CFA violation. Thiedemann, 183 N.J. at 249 ("[B]y the time of a summary judgment motion, it is the plaintiff's obligation to be able to make . . . a demonstration [of ascertainable loss] or risk dismissal of the cause."). We reach this conclusion based on our reading of the summary-judgment record, which shows plaintiff was paid in full and we are persuaded that absent proof of ascertainable loss, the court correctly determined plaintiff could not sustain her CFA claim and defendants are entitled to judgment as a matter of law.

Plaintiff's CFA claim was properly dismissed because she failed to: identify any unlawful conduct that encompassed an unconscionable practice or violation of law; detail material misrepresentations, reasonable reliance, or resulting damages; proffer facts demonstrating a business practice to materially conceal information that ultimately induced her to act; and establish she suffered an ascertainable loss. As plaintiff's unsupported assertions fail to create a material dispute requiring determination by the factfinder, defendants were entitled to judgment as a matter of law on plaintiff's CFA claim. See Brill, 142 N.J. at 540.

## III.

We next turn to plaintiff's argument the August 6, 2021 order denying her motion for leave to amend her complaint constituted error. Under Rule 4:9-1, a motion seeking to amend a complaint always rests in the court's sound discretion. Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501-02 (2006) (quoting Kernan v. One Wash. Park Urb. Renewal Assocs., 154 N.J. 437, 456-57 (1998)). As such, we review a trial court's decision to grant or deny a motion to amend the complaint for abuse of discretion. Port Liberte II Condo. Ass'n v. New Liberty Residential Urb. Renewal Co., 435 N.J. Super. 51, 62 (App. Div. 2014).

"That exercise of discretion requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Notte, 185 N.J. at 501.

Defendants argue plaintiff's amended pleading was fatally flawed and that the court did not abuse its discretion in denying the motion. Defendants also insist that their position in this litigation has been entirely consistent: that they were closed due to EO 107 prior to the date of plaintiff's June 2020 wedding reception, and when they informed plaintiff that they were "ready, willing and able" to conduct the event, subject to the EOs, that statement was entirely accurate.

Plaintiff moved to amend her complaint to add three additional CFA counts which she claimed were based on newly discovered evidence—a May 13, 2020 correspondence from RCC to its insurance carrier, Hartford Insurance Group, stating that defendants' venue was "primarily closed to the public" pursuant to EO 107, and an online article entitled "Wedding Venues Ask for Patience in Uncertain Time."[7] With regard to the correspondence sent to Hartford, plaintiff argues that it showed RCC was representing to its insurance

_____

[7] Nanina's In The Park, Wedding Venues Ask for Patience in Uncertain Time, https://naninasinthepark.com/naninas-in-the-park-covid-19-update (last visited July 1, 2024).

A-2878-21

carrier that RCC was closed to the public while simultaneously advising her that they were "ready, willing and able to host her wedding reception." She maintains this correspondence is evidence of defendants' bad faith in support of her CFA claim. With respect to the article, however, the court correctly concluded plaintiff had offered no explanation for its introduction or use and found it did not establish bad faith, and we concur.

In denying plaintiff's motion for leave to amend her complaint, the court further concluded "[p]laintiff knew of [RCC's] insurance related claim from the outset of this case, upon defendant[s]' filing an answer," the proposed amendment was without merit, and "plaintiff ha[d] not identified an ascertainable loss above the contract deposit, caused by defendant[s]' conduct."

Applying the requisite standard, we discern the court did not abuse its discretion in denying plaintiff's motion to amend her complaint to re-plead three additional CFA counts that were "not sustainable as a matter of law." C.V. by & through C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 306 (2023) (quoting Notte, 185 N.J. at 501). Additionally, plaintiff filed the motion more than one year after she had filed the complaint and made returnable approximately four months after the court's dismissal of the CFA count in her

original complaint and within one month of the expiration of the second discovery end date.

"The court determines whether the proposed amendment would be futile by asking 'whether the amended claim will nonetheless fail and, hence, allowing the amendment would be a useless endeavor.'" Notte, 185 N.J. at 501 (quoting Kernan, 154 N.J. at 456-57). Moreover, we note plaintiff's proposed amended complaint included no allegations of additional losses beyond those for which she had already been compensated—which the court expressly relied on in dismissing the prior CFA count—the sole exception being a vague reference to "attorneys' fees and court costs plaintiff incurred to recover her $50,000." We are persuaded plaintiff's proposed amendment was fatally flawed and, therefore, futile. Thus, the court did not abuse its discretion in denying plaintiff's motion.

IV.

Plaintiff also argues the court erred in dismissing the remaining counts in her complaint alleging intentional breach of constructive trust (count two), negligent breach of constructive trust (count three), and malicious refusal to return the unearned payments in breach of the implied covenant of good faith (count five) and consequently erred in denying her request for punitive damages.

23

Plaintiff claims the court erred in its treatment of defendants' motion to dismiss, arguing defendants' counsel's submission of a certification that included several attachments in addition to the complaint required the court to consider the motion under the summary judgment standard. Plaintiff also argues that the court erred by failing to accept as true, evidence in the record that supported inferences of bad faith as required in deciding a Rule 4:6-2(a) motion to dismiss. We disagree.

"If the court considers evidence beyond the pleadings in a Rule 4:62-2(e) motion, that motion becomes a motion for summary judgment, and the court applies the standard of Rule 4:46." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl, P.C., 237 N.J. 91, 107 (2019). However, there is no support for plaintiff's contention that the court considered evidence beyond the pleadings in rendering its August 27, 2021 oral opinion. Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458, 482 (App. Div. 2015) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005)) ("In evaluating motions to dismiss, courts consider allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."). Thus, plaintiff's argument is without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

We also reject plaintiff's contention defendants' delay in returning the $50,000 deposit to her following the entry of the order for summary judgment in her favor resulted in the creation of a constructive trust or that the court should have imposed such an extraordinary remedy. It is well-settled that a constructive trust is an extraordinary equitable remedy. Flanigan v. Munson, 175 N.J. 597, 611 (2003) (holding the imposition of a constructive trust is a powerful tool to be used only when the equities of a given case clearly warrant it). Although defendants were initially ordered to return plaintiff's deposit on March 18, 2021 and did not return the deposit until June 21, 2021, the court determined plaintiff had failed to demonstrate defendants had been unjustly enriched because the deposit was ultimately returned; thus, plaintiff could not show unjust enrichment. See Flanigan, 175 N.J. at 608 (internal citation omitted) (stating that such a trust is designed to "prevent unjust enrichment and force a restitution to the plaintiff of something that in equity and good conscience [does] not belong to the defendant."). We agree.

We note that after the court's initial order granting summary judgment in favor of plaintiff on her breach of contract claim and ordering the return of her deposit, defendants filed an order to show cause seeking to stay the judgment and a determination of how much of the deposit was to be returned to plaintiff.

Based on our review of the record, we are not persuaded that plaintiff is entitled to the extraordinary relief she seeks because defendants returned the entire deposit and thus, they were not unjustly enriched, and, with the return of her entire deposit, plaintiff was entitled to any other equitable relief. As we previously stated, the creation of a constructive trust is an extraordinary equitable remedy to be used only when the equities of a given case clearly warrant it. Flanigan, 175 N.J. at 611. There are no such equities here.

Moreover, defendants' delay in returning the deposit in full prior to the court's order compelling them to do so is not indicative of actual malice or a wanton and willful disregard of persons who foreseeably might be harmed by defendants' alleged acts or omissions, N.J.S.A. 2A:15-5.12(a), within the meaning of the Punitive Damages Act, N.J.S.A. 2A:15-5.9 to -5.17. See N.J.S.A. 2A:15-5.10 (defining "[a]ctual malice" and "[w]anton and willful disregard" under the Punitive Damages Act). Defendants placed the $50,000 in a trust account pending final resolution of all claims and counterclaims and remitted the full amount to plaintiff on June 21, 2021, pursuant to the court's June 17, 2021 judgment following resolution of the OTSC. And, by the time the court decided defendants' motion to dismiss on August 27, 2021, plaintiff's money had been returned.

26

Defendants' actions do not support a punitive damages award under the Punitive Damages Act. See id. at 451-52 ("The mere fact that a court has found that the weight of the evidence is balanced in favor of one side rather than the other . . . does not furnish the basis for a finding of the type of wrongful, malicious conduct which could support a claim for punitive damages[.]"). And, as the court noted, defendants had returned plaintiff's deposit in full. Quinlan v. Curtiss-Wright Corp., 204 N.J. 239, 274 (2010) (citing Rendine v. Pantzer, 141 N.J. 292, 313 (1995)) (explaining liability under the Act is reserved for intentional wrongdoing that is "especially egregious.").

V.

We similarly reject plaintiff's argument the court erred in denying her application for attorney's fees and costs pursuant to N.J.S.A. 2A:15-59.1 (the frivolous litigation statute) and Rule 1:4-8,[8] which she had filed after the court dismissed the counterclaims for defamation and slander per se. The court found that the contents of the social-media posts that was the basis of the counterclaim were not defamatory "based on the nature of the post, based on what was in the post" and defendants had not established that plaintiff authored any of the posts

---

[8] Plaintiff alleged she had incurred $21,540.00 in attorneys' fees, plus $100.00 for the motion filing fees as a result of defendants' failure to withdraw their counterclaims.

or that any of the posts related to her wedding. Thus, there was no basis on which to award fees.

We review a court's decision to award fees for an abuse of discretion. Tagayun v. AmeriChoice of N.J., Inc., 446 N.J. Super. 570, 577, (App. Div. 2016). The frivolous-litigation statute permits a court to award reasonable counsel fees and litigation costs to a prevailing party in a civil action if the court determines that the complaint, counterclaim, cross-claim, or defense is frivolous. N.J.S.A. 2A:15-59.1. A claim is considered frivolous when: "no rational argument can be advanced in its support"; "it is not supported by any credible evidence"; "a reasonable person could not have expected its success"; or "it is completely untenable." Belfer v. Merling, 322 N.J. Super. 124, 144 (App. Div. 1999). "[F]alse allegations of fact [will] not justify [an] award . . . unless they are made in bad faith, 'for the purpose of harassment, delay or malicious injury.'" McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 561 (1993) (quoting N.J.S.A. 2A:15-59.1(b)(1)). However, an honest attempt to pursue a perceived, though ill-founded, claim is not considered to be frivolous. Id. at 563. The burden of proving bad faith is on the party who seeks fees and costs. Id. at 559.

On this record, we discern no abuse of discretion in the court's decision to deny plaintiff's motion for attorneys' fees. The court concluded defendants had presented limited proofs in support of their defamation and slander per se claims; but we find no support in the record for plaintiff's argument defendants' counterclaims were frivolous or unsupported "by any credible evidence" and "completely untenable." Merling, 322 N.J. Super. at 144. We therefore discern no abuse of discretion in the court's denial of plaintiff's motion for attorney's fees.

VI.

We now turn to defendants' arguments raised in their cross-appeal: (1) the court erred by voiding the contract as a whole rather than finding there was an enforceable contract that plaintiff had breached by cancelling the event and shifting the risk of loss from plaintiff to defendants, (2) the court erred by failing to conduct a proof hearing on their quantum-meruit theory, and (3) plaintiff breached the Contract by failing to make the final payment and by cancelling the event.

From this record, we discern no support for defendants' contentions. Again, it is undisputed that defendants were fully aware of the then-existing limitations on indoor gatherings by May 22, 2020—as reflected in plaintiff's

29

correspondence to Fred Puccio—and defendants also knew plaintiff had not sought to modify the Contract by reducing the number of invited guests in order to comply with EO 152. Given the limitations imposed by EO 152, which was in effect at the time plaintiff's wedding date was approaching, both parties questioned whether the wedding could proceed consistent with the terms of the Contract, which contemplated a 225-guest wedding. We need not look any further than the email exchanges, which were carefully crafted to avoid stating the obvious: that neither party wanted to be the first to admit that plaintiff's wedding reception could not take place as stated in the Contract.

As the court found, plaintiff had not breached the Contract by notifying defendants "within three month[s] of [the June 20, 2020] reception date that the date could not be honored" due to the EOs in place at the time. The court also found that plaintiff had not breached the Contract by refusing to renegotiate a later reception date, stating "[n]othing compelled either side to agree on a subsequent date." Importantly, the court recognized that the Contract "contemplated that all of plaintiff's guests would be in the same room, an occurrence that [defendants] could not guarantee." We therefore find no basis in the summary judgment record on which the court could have excused defendants from performance under the Contract and at the same time enforced

30

only the provisions in the Contract that would require plaintiff to bear the risk of loss.

In the alternative, defendants argue they are entitled to quantum merit for services performed under the Contract and that the court erred in not granting them some financial relief. We likewise reject defendants' quantum-merit claim because defendants failed to support their claim by providing proof of expenses. The court rejected defendants' claim, citing a lack of evidence—specifically that "[n]o specific expenses unique to the planned event (in identification, in cost, and when the expenses were incurred) were brought to the court's attention." As defendants' unsupported assertions failed to create a material dispute requiring determination by the factfinder, the court properly granted summary judgment on defendants' breach-of-contract claim. See Brill,142 N.J. at 540.

We therefore affirm the court's orders in all respects, granting defendants' motion for partial summary judgment against plaintiff and dismissing plaintiff's CFA claim; granting defendants' motion to dismiss the remaining three counts of plaintiff's complaint; denying plaintiff's motion for leave to amend her complaint and application for fees; and we similarly affirm the court's order granting plaintiff's motion for partial summary judgment and the return of the $50,000 deposit. In sum, we note the parties do not dispute that plaintiff's 225-

31

guest wedding and reception plans were drastically and unfortunately interrupted by the COVID-19 pandemic and the Governor's mandated restrictions, including requiring the closure of defendants' venue for a period of time.

To the extent we have not expressly addressed any arguments presented by the parties, we note that we have considered the arguments and determined they are not of sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION