NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3464-12T4

HESS CORPORATION,

      Plaintiff-Respondent,

v.

ENI PETROLEUM US, LLC,

      Defendant-Appellant,

and

ENI USA GAS MARKETING LLC,

      Defendant.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **March 26, 2014** |
| **APPELLATE DIVISION** |

Argued: December 18, 2013 — Decided: January 9, 2014

Before Judges Simonelli, Fasciale and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6149-10.

Gary M. Fellner argued the cause for appellant (Porzio, Bromberg & Newman, attorneys; Mr. Fellner, of counsel and on the briefs; Michael J. Naporano, on the briefs).

Christopher Raleigh argued the cause for respondent (Cozen O'Connor, attorneys; Mr. Raleigh, of counsel and on the brief; Geoffrey D. Ferrer, on the brief).

The opinion of the court is delivered by

HAAS, J.A.D.

In this dispute over the application and effect of force majeure provisions in a natural gas supply contract, defendant Eni Petroleum US, LLC appeals from the March 7, 2013 amended final judgment of the Law Division, which required defendant to pay plaintiff Hess Corporation $317,000 in damages, $81,476.87 in prejudgment interest, and $263,024.15 in legal fees. After reviewing the record in light of the contentions advanced on appeal, we affirm.

The material facts are not in dispute. Defendant is a Delaware corporation with its principal place of business in Houston, Texas. It produces natural gas from, among other locations, sources under the sea floor in the Gulf of Mexico. Plaintiff is also a Delaware corporation, but has a place of business in Woodbridge, New Jersey.

On September 5, 2007, the parties reached agreement on the basic terms that would govern a series of natural gas sales from defendant to plaintiff. Those general terms were contained in a "Base Contract" prepared from an industry form published by the North American Energy Standards Board (NAESB). The NAESB form consists of three parts: (1) the Base Contract with General Terms and Conditions; (2) a Transaction Confirmation form, which allows the parties to fill in details regarding specific

transactions; and (3) a "Special Provisions" addendum, which could be used to modify the General Terms and Conditions.

Under the Base Contract, defendant agreed to "sell and deliver" and plaintiff agreed to "receive and purchase" natural gas. The Base Contract contained only the basic provisions that would apply to any subsequent natural gas sales between the parties, and did not recite the details for any specific transaction. Instead, the details of each subsequent sale were to be memorialized in written "Transaction Confirmations." The Base Contract did not specify a particular source of the gas defendant would sell, nor did it state that the gas would be produced by defendant, rather than by another producer.

Beginning on November 20, 2007, the parties completed Transaction Confirmation forms for the months of December 2007, January, February, March, and April 2008 by filling in the specific details of the next month's sale/purchase of natural gas. Each Transaction Confirmation form specified that the performance obligation was "Firm,"[1] as well as the quantity, price, delivery period, and delivery point for the following

---

[1] "Firm" as defined in the Base Contract, means that performance by either party may be interrupted "only to the extent that such performance is prevented for reasons of Force Majeure." The parties chose "Firm" over the option of "Interruptible," which allows either party to interrupt performance for any reason without liability.

month's transaction.  The delivery point for each transaction was the "Tennessee Gas Pipeline on 2i - Zone L - 500 Leg" ("Tennessee 500").[2]  Each form also reiterated that it was subject to the Base Contract dated September 5, 2007. Critically, the Transaction Confirmation forms did not specify which transporter[3] was to be utilized for each transaction.  The forms also did not state that defendant would produce the natural gas.

On March 20, 2008, the parties negotiated the April 2008 transaction that is the subject of this appeal.  The agreement was memorialized in a Transaction Confirmation signed on March 24, 2008.  The parties agreed that defendant would deliver 20,000 MMBTU[4] of gas per day to the Tennessee 500 Leg Pool[5] #020999 from April 1 through April 30, 2008 for a contract price

---

[2] The Tennessee 500 is an off-shore pipeline that runs north from a platform in the Gulf of Mexico to Louisiana.

[3] "Transporter" is defined in the Base Contract as "all Gas gathering or pipeline companies, or local distribution companies, acting in the capacity of a transporter, transporting Gas for Seller or Buyer upstream or downstream, respectively, of the Delivery Point pursuant to a particular transaction."

[4] "MMBTU" means one million British Thermal Units.  In the industry, it is also referred to as "Dekatherms" and "Deks."

[5] "Pool" refers to an "aggregate point for gas supplies from various sources," which operates to balance out the fluctuation and uncertainty in production.

"Inside FERC[6] Gas Market Report First of Month Index." This gas would be pooled with gas from other sources and plaintiff would then be able to receive the gas at the Tennessee 500. Similar to all the prior transactions, the parties left blank the "transporter" information section of the Transaction Confirmation form. Under "Special Conditions" on the form, they also listed "None." The Base Contract and the Transaction Confirmation form for the delivery period of April 1 through April 30, 2008 constitute the full, integrated contract controlling the transaction at issue in this appeal.

Defendant produced natural gas from wells located in the Gulf of Mexico. Its wells were connected through underwater pipelines to the Independence Hub ("I-Hub"), a floating platform in the Gulf, approximately 185 miles off the coast of Louisiana. Other producers also sent gas to the I-Hub. Once in the I-Hub, the gas is aggregated, processed, and transported to shore through other underwater pipelines. The natural gas defendant produced at this location was transported through a single underwater pipeline called the Independence Trail Pipeline, owned and operated by a separate entity, Enterprise. The Independence Trail leads to another platform in the Gulf called

---

[6] "Inside FERC" refers to a public price index of the average natural gas price for the prior month.

the West Delta 68.  From there, the gas goes to the Tennessee 500, where it is placed into the pool.

On April 8, 2008, a leak was discovered in the Independence Trail Pipeline in a flexjoint that connected the Pipeline to the I-Hub.  As a result, Enterprise stopped all gas transportation through the Pipeline.  Because of the leak, defendant could not get any gas from the I-Hub to the Tennessee 500 until June 2008, when Enterprise repaired the Pipeline.

Upon learning of the leak, defendant notified plaintiff in writing that it was declaring force majeure under the terms of the Base Contract and that it would not be delivering any gas to the Tennessee 500 for plaintiff.  In pertinent part, the force majeure terms of the contract state:

> [N]either party shall be liable to the other for failure to perform . . . to the extent such failure was caused by a Force Majeure. The term "Force Majeure" as employed herein means any cause not reasonably within the control of the party claiming suspension[.]
>
> . . . .
>
> Force Majeure shall include, but not be limited to . . . interruption and/or curtailment of Firm transportation and/or storage by Transporters[.]

Plaintiff rejected defendant's declaration of force majeure as a reason for its failure to perform under the contract. Plaintiff pointed out that the Tennessee 500 pool is fed by a

number of different sources.[7]  Therefore, the leak in the Independence Trail Pipeline did not affect the availability of natural gas at the Tennessee 500 delivery point.  Plaintiff noted that the Transaction Confirmation form also did not identify Enterprise or the Independence Trail Pipeline as the specific transporter.  After defendant failed to provide gas to plaintiff at the Tennessee 500 pool, plaintiff was forced to purchase gas on the "spot market"[8] to fulfill its own obligations.  This gas cost over $300,000 more than plaintiff would have had to pay defendant for the gas under the March 24, 2008 Transaction Confirmation.

Plaintiff filed a breach of contract action against defendant.  Judge Richard Rebeck conducted a three-day bench trial and issued a written decision finding defendant liable for plaintiff's damages.  The judge reviewed the pertinent provisions of the Base Contract and the Transaction Confirmation form, and noted that, in the March 24, 2008 form, the parties

---

[7] Defendant conceded that it had other production points in the Gulf that tied into the Tennessee 500 through pipelines not affected by the leak on the Independence Trail Pipeline. However, it argued that all of the gas was committed to other customers and that, without the gas from the Independence Trail Pipeline, it could not fulfill its contractual obligation to plaintiff.

[8] The "spot market" refers to the Intercontinental Exchange Spot Market, an electronic system used to trade gas.

identified only "the contract price, the delivery period, the performance obligation (quantity/Firm) and delivery point (Tennessee 500 Leg). No base contract number is listed nor a transporter and transporter contract number identified. No special conditions are set forth."

The judge found that "[t]he absence of a listed transporter or special conditions is critical to the disposition of this matter." Defendant had agreed to provide a specific quantity of gas at a specific location, the Tennessee 500, during the month of April 2008. Nothing in the contract stated that defendant would only be able to provide the gas through a specific transporter, Enterprise, using a specific route, the Independence Trail Pipeline. Gas remained available from other sources at the delivery point. Thus, the judge ruled that the leak in the Independence Trail Pipeline did not constitute a force majeure event under the contract and was not grounds for excusing defendant's failure to perform the clear terms of its agreement with plaintiff.

After the judge denied defendant's motion for reconsideration, the parties stipulated to the amount of damages, interest, and fees due to plaintiff and the judge entered an amended final judgment on March 7, 2013. This appeal followed.

On appeal, defendant argues that the judge erred in rejecting its <u>force majeure</u> defense. An appellate court must accord deference to a trial court's factual findings when such findings are "supported by adequate, substantial and credible evidence." <u>Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.</u>, 65 <u>N.J.</u> 474, 484 (1974). But "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 <u>N.J.</u> 366, 378 (1995). Contract interpretation is a question of law. <u>Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy</u>, 210 <u>N.J.</u> 597, 605 (2012). Accordingly, no special deference is given to the trial court's interpretation; rather, this court "look[s] at the contract with fresh eyes." <u>Kieffer v. Best Buy</u>, 205 <u>N.J.</u> 213, 222-23 (2011); <u>see</u> <u>Manalapan Realty</u>, <u>supra</u>, 140 <u>N.J.</u> at 378. Applying this standard, we conclude that there was no error.

The parties agree that the Base Contract and Transaction Confirmation are governed by the laws of New York. Applying New York contract law, we must first determine whether the terms of the contract are ambiguous. <u>Int'l Multifoods Corp. v. Commercial Union Ins. Co.</u>, 309 <u>F.</u>3d 76, 83 (2d Cir. 2002). Ambiguity is found if the terms in the contract are susceptible

to more than one meaning. <u>Chimart Assocs. v. Paul</u>, 498 <u>N.Y.S.</u>2d 344, 346 (1986). The parties' differing subjective interpretations, however, will not rise to the level of ambiguity if the contract is otherwise clear. <u>See, e.g.</u>, <u>Bethlehem Steel Co. v. Turner Constr. Co.</u>, 161 <u>N.Y.S.</u>2d 90, 93 (1957); <u>Moore v. Kopel</u>, 653 <u>N.Y.S.</u>2d 927, 929 (App. Div. 1997). Only if the contract is ambiguous will the court allow extrinsic evidence of the meaning of the terms. However, if the contract terms are unambiguous, the court will not permit extrinsic evidence; rather, it will look only at the contract itself to determine the intent of the parties. <u>W.W.W. Assocs. v. Giancontieri</u>, 565 <u>N.Y.S.</u>2d 440, 443 (1990); <u>R/S Assocs. v. N.Y. Job Dev. Auth.</u>, 744 <u>N.Y.S.</u>2d 358, 360, <u>rearg. denied</u>, 747 <u>N.Y.S.</u>2d 411 (2002); <u>Mercury Bay Boating Club, Inc. v. San Diego Yacht Club</u>, 557 <u>N.Y.S.</u>2d 851, 857 (1990).

In the present case, the parties agree that the contract is unambiguous. The parties do not dispute the terms in the contract, nor do they dispute the existence of the <u>force majeure</u> provisions. They do, however, dispute the availability of the <u>force majeure</u> defense in these specific circumstances. Thus, we turn to a consideration of those provisions.

<u>Force majeure</u> clauses are narrowly construed. <u>See, e.g.</u>, <u>Kel Kim Corp. v. Cent. Markets, Inc.</u>, 524 <u>N.Y.S.</u>2d 384, 385

(1987). "Ordinarily, only if the <u>force majeure</u> clause specifically includes the event that actually prevents a party's performance will that party be excused." <u>Ibid.</u>

Here, neither the Base Contract nor the Transaction Confirmation specified the source of the natural gas defendant would sell to plaintiff. The contract documents do not identify a specific transporter which would deliver the gas or a specific pipeline that would be used. No special conditions were placed on defendant's obligation to provide the gas at the specified date at the Tennessee 500. The contract documents merely fix the price to be paid, the amount of gas to be delivered, and the delivery point (the Tennessee 500) where the gas would be made available to plaintiff.

Because there was nothing limiting defendant's performance to only gas it produced through the I-Hub, an interruption in the Independence Trail Pipeline bringing that gas to the Tennessee 500 was irrelevant to defendant's obligation. Defendant was required to have gas available in the Tennessee 500 pool for plaintiff, regardless of how it got there. Defendant was free to use its other sources of gas to fill part of the contract or to purchase gas from the pool or the spot-market to meet its contractual obligation to plaintiff.

Therefore, defendant could not invoke force majeure as a defense to plaintiff's breach of contract claim.

As Judge Rebeck observed, the decision of the Texas Court of Appeals in Virginia Power Energy Mktg., Inc. v. Apache Corp., 297 S.W.3d 397 (Tex. App. 2009), is instructive. In that case, the seller claimed force majeure under a NAESB contract, which was identical to the Base Contract in this case. The seller, Apache, had agreed to deliver natural gas to the buyer, Virginia Power, at a delivery point called the Transco-65. Id. at 400. Because of damages caused by hurricanes, Apache stated it lost its gas supply and could not deliver the gas. Id. at 405. The Transco-65, however, was unaffected by the storms and remained open for business. Ibid.

As here, neither the Base Contract nor the subsequent Transaction Confirmations revealed any intent by Apache to limit its "gas supply" to any specific supply source. Id. at 406. Instead, Apache argued that the term "gas supply" was commonly understood in the industry "to refer only to those sources internally designated by the seller." Id. at 405-06. On the other hand, Virginia Power asserted that, "if a seller wishes to limit its 'supply' to a specific source, it must expressly state that intent in the contract." Id. at 406. The court rejected Apache's argument, finding that, if the parties had intended to

limit Apache's obligation to providing gas from a particular source, this term should have been included in the Transaction Confirmation. Id. at 406-07.[9]

Relying upon Virginia Power, Judge Rebeck stated:

> The Texas court in Virginia Power, supra, makes clear the significance and requirements of delimiting terms that are to control a contract such as that between [defendant] and [plaintiff]. There was testimony that [defendant's] sole source of gas in the Gulf in quantities to meet the . . . contract came from the Independence Hub to the agreed upon deliver[y] point. Likewise, as stated above, [defendant] had other wellheads in the Gulf tied to the delivery point that, according to the testimony, were insufficient to supply [plaintiff] or whose production was committed. Since the source of its gas supply was not set forth in the Base Contract or as [a] special condition of the Transaction Confirmation, [defendant] cannot rely upon force majeure in this context to excuse performance.
>
> Likewise, absent the designation of the Independence Trail Pipeline as the transporter in the Base Contract or Transaction Confirmation, [defendant] cannot rely upon force majeure in this context to excuse performance.

We discern no basis for disturbing the judge's reasoned determination.

---

[9] The court found there were questions of fact as to the definition of Apache's "gas supply" and, accordingly, it remanded the matter for further proceedings. Virginia Power, supra, 297 S.W.3d at 409.

13                                                    A-3464-12T4

Defendant argues that its performance should be excused under the portion of the <u>force majeure</u> clause that states that a <u>force majeure</u> event "shall include, but not be limited to . . . interruption and/or curtailment of Firm transportation and/or storage by Transporters." Because the transporter defendant used, Enterprise, could not make its deliveries using the Independence Trail Pipeline, defendant argues that its own performance should have been excused. However, defendant's argument ignores the fact that the parties did not identify Enterprise as a transporter or the Independence Trail Pipeline as the sole source of the gas needed to meet defendant's obligation. This provision also plainly refers to "transporter<u>s</u>", thus indicating that the gas could come from more than one point to the Tennessee 500. Thus, this provision does not excuse defendant's performance.

Defendant cites <u>Loomis v. N.Y. Cent. & Hudson River R.R. Co.</u>, 96 <u>N.E.</u> 748, 751 (N.Y. 1911), in support of its contention that "[t]he fact that the parties did not identify the Transporter in the March 24 Transaction Confirmation was insignificant, as the specific route the gas was to take to get to the agreed Delivery Point was not essential." However, this case is factually inapposite to the matter at hand. The issue in <u>Loomis</u> was whether parol evidence could be admitted to show

14                                                          A-3464-12T4

that the parties intended that a "carload of potatoes" be delivered using a particular train route when the contract did not so specify. Id. at 748. The court held that such parol evidence was inadmissible. Id. at 751. Thus, this case has no relevance to the circumstances presented here, where the parties both agree that the contract is unambiguous and that parole evidence cannot be admitted to alter the terms they agreed upon.

Significantly, however, in Loomis, the court stated that "[t]he effect of not specifying the route was simply to leave that subject open to the choice of the carrier, which could select any route that it chose." Ibid. This principle plainly supports the trial judge's determination. The source of the gas and the route it would follow to the Tennessee 500 were plainly "incidental" to the parties. The contract is clear: defendant was required to provide plaintiff with a specific amount of gas at the Tennessee 500 during April 2008, regardless of how it got the gas to the delivery point. Thus, the leak in the Independence Trail Pipeline did not excuse defendant's performance.

Finally, defendant argues that the judge's interpretation of the contract "negates the force majeure provision" and that the judge erred in finding that defendant "waived" that provision. We disagree. Had the contract documents set forth

the source of the gas defendant proposed to sell and the transporter it intended to use to deliver that gas, <u>force majeure</u> could have been invoked. However, because the contract, by its express and unambiguous terms, did not limit defendant's obligation in that fashion, the judge correctly rejected defendant's argument.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3464-12T4