**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1875-24

JANANI MANAGEMENT, LLC,

 Plaintiff-Appellant,

v.

SUPER 8 MOTELS, INC. and
SUPER 8 WORLDWIDE, INC.,
successor-in-interest to SUPER 8
MOTELS, INC.,

 Defendant-Respondent.

_____

Submitted March 19, 2026 – Decided April 20, 2026

Before Judges Marczyk and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1120-22.

Guarino & Co. Law Firm, LLC, attorney for appellant (Philip L. Guarino, on the briefs).

Connell Foley LLP, attorneys for respondent (Bryan P. Couch, of counsel and on the brief; Justin M. Vogel, on the brief).

PER CURIAM

Plaintiff Janani Management, LLC appeals from the trial court's November 20, 2024 order granting summary judgment in favor of defendant Super 8 Worldwide, Inc., formerly known as Super 8 Motels, Inc. (Super 8), and from the court's January 30, 2025 amended judgment in favor of Super 8. We affirm.

I.

A. Background.

Super 8 operates a guest lodging facility franchise system but does not directly own or manage hotels. In 2006, Super 8 entered into a franchise agreement (Franchise Agreement) with Shirjivan, LLC (Shirjivan) governing the operation of a seventy-six-room guest lodging facility in Fenton, Missouri (Facility) under the Super 8 registered trademark. In 2015, Super 8 and Shirjivan also entered into a SynXis agreement governing Shirjivan's access to and use of certain technologies.

Jiten Patel, a former Shirjivan member who helped open and manage the Facility as a Super 8 franchise, established Janani Management, LLC in 2018. In November 2019, Super 8, Shirjivan, and plaintiff entered into an assignment and assumption agreement (Assignment and Assumption Agreement) whereby plaintiff "accept[ed] and assume[d] the rights, benefits[,] and obligations of

[Shirjivan] under the [Franchise Agreement and SynXis Agreement]." In particular, plaintiff agreed to pay Super 8 the outstanding recurring fees[1] Shirjivan owed, which totaled $122,852.27, including interest, as of the Assignment and Assumption Agreement's execution. In December 2019, plaintiff and Super 8 entered into a payment plan that required plaintiff to pay the outstanding recurring fees in installments. Plaintiff was also obligated to pay any recurring fees accruing after the Assignment and Assumption Agreement. It also assumed Shirjivan's obligation under the Franchise Agreement to operate the Facility as a Super 8 hotel for a twenty-year term, which began in 2006.

At the time the Assignment and Assumption Agreement was executed, the Facility had been temporarily closed for approximately nine months due to safety and fire code violations discovered in February 2019. After addressing the violations, plaintiff reopened the Facility in March 2020. The Facility did not generate any revenue between its closure in February 2019 and its reopening in March 2020.

---

[1] The recurring fees, as described in further detail below, included royalties, system assessment fees, taxes, and other fees, subject to accruing interest.

A-1875-24

The Franchise Agreement required plaintiff to pay recurring fees over the course of its twenty-year term, including a five percent royalty fee on gross room sales, a three percent system assessment fee, and interest calculated at one-and-one-half percent per month or the maximum permitted by law, whichever was less, on any past-due recurring fees. Similarly, the SynXis Agreement required periodic payments for royalties, system assessment fees, SynXis fees, taxes, interest, and other recurring fees. The Franchise Agreement also contained a liquidated damages clause requiring plaintiff to pay $2,000 per authorized guest room in the event plaintiff terminated the agreement. Plaintiff also agreed "the non-prevailing party w[ould] pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce th[e Franchise] Agreement or collect amounts owed under" it.

In February 2021, a storm caused damage to the Facility, including frozen pipes, resulting in plaintiff only being able to operate approximately fifty percent of the Facility's rooms, which plaintiff claimed it noted in the SynXis system. However, plaintiff did not otherwise inform Super 8 in writing of the storm damage or limited room availability. Approximately one year later, on February 15, 2022, plaintiff informed Super 8 via letter it would be ceasing

4

operations of the Facility as a Super 8 registered trademark guest lodging center, effective immediately, thereby terminating the Franchise Agreement.

On March 17, 2022, Super 8 acknowledged plaintiff's termination of the Franchise Agreement. It further advised plaintiff it was required to pay liquidated damages in the amount of $152,000 pursuant to Section 12.1 of the Franchise Agreement as well as all outstanding recurring fees, including Shirjivan's outstanding fees, which plaintiff assumed on November 15, 2019 by signing the Assignment and Assumption Agreement.

In June 2022, plaintiff sued Super 8, seeking a declaratory judgment it was not liable to Super 8 for terminating the Franchise Agreement because the February 2021 storm and prior safety and fire code violations excused its performance under the contract pursuant to the Franchise Agreement's Casualty Loss Provision, the SynXis Agreement's Force Majeure Provision, and the frustration of purpose doctrine. Plaintiff also sought a declaratory judgment finding it had no financial obligations to Super 8 for franchise fees outstanding as of the time it took over as franchisee in November 2019, as it never executed the Assignment and Assumption Agreement or, alternatively, Super 8 waived its right to payment by failing to demand plaintiff enter into a payment plan as required under the Assignment and Assumption Agreement.

5

Super 8 counterclaimed for: an accounting of all books, records, and accounts (count one); breach of contract for liquidated damages (count two), or, alternatively, actual damages (count three); breach of contract for failing to pay recurring fees (count four); and unjust enrichment (count five). Thereafter, it moved for summary judgment on its breach of contract claims for liquidated damages and recurring fees (counts two and four) as well as on both counts of plaintiff's complaint.

B. The Trial Court's Decision.

On November 20, 2024, following oral argument, the trial court entered an order dismissing plaintiff's complaint with prejudice, granting Super 8's summary judgment motion as to counts two and four of its counterclaim, and entering a judgment in favor of Super 8 and against plaintiff in the amount of $449,092.13. That amount included $223,706.29 in recurring fees and $225,385.84 in liquidated damages, each inclusive of interest up to November 19, 2024. The court also dismissed counts one and three of Super 8's counterclaim without prejudice and count five with prejudice and ordered Super 8 to submit an affidavit of services in support of its motion for attorneys' fees and costs.

In its comprehensive and well-reasoned written decision, the trial court found no dispute regarding the terms of the contract between plaintiff and Super 8. It noted the parties agreed the Assignment and Assumption Agreement included the Franchise Agreement and SynXis Agreement between Super 8 and Shirjivan, and the payment plan for Shirjivan's outstanding balance was an addendum to the Assignment and Assumption Agreement. Accordingly, the court found the contract valid and enforceable.

The court next addressed whether plaintiff breached the contract as Super 8 alleged in counts two and four of its counterclaim. Regarding recurring fees, it found there was no dispute as to the amount plaintiff owed Super 8, noting the recurring fees did not begin accruing until March 4, 2020, as Super 8 had given plaintiff permission to close the Facility from November 15, 2019 to March 3, 2020. Section 7 of the Franchise Agreement provided plaintiff must pay Super 8 recurring fees, including a royalty of five percent of the gross rooms sales revenue of the Facility, plus a monthly system assessment fee of three percent of the gross room revenue.

The court found the amount of recurring fees due at the time plaintiff terminated the contract was $15,646.64, according to the itemized list of recurring fees attached to Super 8's affidavit. It noted Super 8's March 17, 2022

7

letter acknowledging the termination stated the amount due for the recurring fees plus accrued interest at the time to be $16,004.84. The court rejected plaintiff's argument there was an issue of material fact as to the amount of recurring fees owed because Super 8's affidavit, dated October 11, 2024, stated the total amount due was $23,621.76 as opposed to $16,004.84, reasoning the change in amount was due to the continued accrual of interest on the $15,646.64 plaintiff originally owed. Thus, the total amount due for plaintiff's unpaid recurring fees, accrued after the execution of the Assignment and Assumption Agreement, was $24,099.94 as of November 19, 2024.

The court further determined plaintiff assumed the obligation to pay Shirjivan's outstanding recurring fees under the Assignment and Assumption Agreement. These fees began accruing in December 2016 and totaled $122,852.27, including interest, as of November 15, 2019, when plaintiff became responsible for the debt. Regarding plaintiff's argument Super 8 conceded it was only owed $16,004.84 in the March 17, 2022 letter, the court found plaintiff had "ignore[d] the next paragraph in the letter which . . . specifically state[d] . . . there [wa]s an additional sum of $122,852.27 plus interest due for the non-payment of the balance owed by Shirjivan." Thus, the court found no dispute as to the material fact plaintiff owed Super 8 $122,852.27

as of November 15, 2019, plus interest for any non-payment thereafter, amounting to an additional $15,646.64 of unpaid recurring fees plus interest as of March 4, 2024.

The court also rejected plaintiff's argument Super 8 waived its right to payment by failing to make a demand. Section 17.2 of the Franchise Agreement stated Super 8 "may insist on strict compliance at any time after written notice" if it allowed plaintiff to deviate from the terms of the agreement and Super 8's "silence or inaction w[ould] not . . . establish a waiver, consent, course of dealing, implied modification[,] or estoppel." It noted Section 16.9 of SynXis Agreement contained a similar provision. Thus, the court found Super 8's failure to demand payment until the March 2022 letter acknowledging plaintiff's termination did not constitute a waiver of its right to seek payment of Shirjivan's outstanding recurring fees, according to the express terms of the contract.

The court found plaintiff was required to pay Super 8 $152,000 pursuant to the Franchise Agreement's "clear and unambiguous" liquidated damages clause in Section 12.1 of the agreement, which set the rate at $2,000 per room plaintiff was authorized to rent. It further found the clause constituted a "good faith effort" by the parties to estimate the monthly damages to Super 8 due to a premature termination of the Franchise Agreement such that the provision was

"reasonable and enforceable." Accordingly, the court rejected plaintiff's argument Super 8 was not entitled to liquidated damages under the contract's terms.

Both Section 7.3 of the Franchise Agreement and Section 5.3 of the SynXis Agreement included provisions requiring plaintiff to pay interest at a rate of one-and-one-half percent per month on any overdue balances. Thus, the court concluded plaintiff owed Super 8, as of November 19, 2024, $223,706.29 in recurring fees including interest plus $225,385.84 in liquidated damages including interest, totaling $449,092.13.

The court next addressed plaintiff's argument it should be excused from performing under the contract and paying liquidated damages and interest under the contract's Casualty Loss and Force Majeure Provisions. It also addressed plaintiff's liability under the doctrine of frustration of purpose.

According to the Casualty Loss Provision of the Franchise Agreement's "clear and unambiguous" terms, the court concluded plaintiff was still required to pay the recurring fees accrued prior to the February 2021 storm plus prejudgment interest under the Assignment and Assumption Agreement. The court assumed, for the purpose of the motion, plaintiff suffered a casualty due to a weather-related condition but found plaintiff did not comply with the

10

Casualty Loss Provision's notice requirements such that its performance under the contract was not excused. It reasoned plaintiff failed to notify Super 8 in writing of the February 2021 storm until a year later, in its February 15, 2022 termination letter, and failed to advise Super 8 within sixty days of the storm whether it intended to restore the Facility.

The court rejected plaintiff's argument it provided notice to Super 8 through the SynXis system by indicating rooms were unavailable due to storm damage. Notification of that kind did not satisfy Section 11.3.1's requirements or Section 17.3 of the contract, which required notice to be sent to a specific address in New Jersey via fax or by delivery service or first class mail. The court noted it was undisputed plaintiff failed to provide notice of the casualty in any of those three manners, and the fact plaintiff delivered its February 11, 2022 termination letter via fax demonstrated its awareness of the contract's notice requirements.

The court also rejected plaintiff's argument Super 8 had actual or constructive notice of the storm. It reasoned a notation in the SynXis reservation system did not constitute sufficient notice under Sections 11.3.1 and 17.3 of the contract and, nevertheless, plaintiff did not advise Super 8 whether it intended to restore, rebuild, and refurbish the Facility within 180 days. Plaintiff would

still be required to pay liquidated damages even if it had complied with the Casualty Loss Provision's notice requirements because plaintiff continued to operate the Facility for approximately a year following the storm before terminating the contract. The court aptly noted, "[p]laintiff cannot reap the benefits of the [F]ranchise [A]greement and belatedly invoke the protections of the [C]asualty [L]oss [P]rovision without timely complying with the notice requirements in the manner set forth in the contract."

Similarly, the court found the SynXis Agreement's Force Majeure Provision did not relieve plaintiff of its monetary obligations to Super 8 or excuse its performance, because the provision only delayed performance of payment for recurring fees but did not excuse the recurring fees and liquidated damages due under the Franchise Agreement. It also reasoned plaintiff failed to comply with the notice requirements of the provision by failing to provide written notice to Super 8 pursuant to Section 15.1 of the SynXis Agreement. It explained, even if plaintiff had provided written notice, plaintiff would not have been relieved of its obligation to pay liquidated damages under the Franchise Agreement's Casualty Loss Provision, because of the Force Majeure Provision. Given plaintiff continued to operate the Facility for a year following the

February 2021 storm, it was not relieved of the duty to pay liquidated damages under the Franchise Agreement.

The court found the parties contemplated the possibility of an intervening weather event preventing plaintiff from renting out all of the Facility's rooms based on the language and remedies in the Franchise Agreement's Casualty Loss Provision and the SynXis Agreement's Force Majeure Provision. However, plaintiff did not invoke those clauses and instead continued operating the Facility at fifty-percent capacity with the full benefits of both agreements. The court concluded the reduction in plaintiff's gross income due to having fewer rentable rooms did not fundamentally alter the contract and, thus, did not excuse plaintiff's performance under the doctrine of frustration of purpose.

Thereafter, pursuant to the trial court's November 20, 2024 order, Super 8 submitted an affidavit of services and a supplemental affidavit of services in support of its motion for attorneys' fees and costs. Plaintiff did not challenge Super 8's submission, despite the court providing it an opportunity to do so. On January 30, 2025, the court entered an order, along with a statement of reasons, amending the November 20, 2024 order to add $31,225.13 in attorneys' fees and costs in favor of Super 8, bringing the total amount of the amended judgment to $480,317.26.

II.

Plaintiff argues on appeal there is no basis to impose liability upon it based on the Casualty Loss and Force Majeure Provisions of the Franchise and SynXis Agreements, coupled with the frustration of purpose doctrine. It further contends material issues of fact exist as to damages.

We review summary judgment decisions de novo, applying the same standard used by the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Under this standard, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non[-]moving party, there is no 'genuine issue for trial.'" Alfano v. Schaud, 429 N.J. Super. 469, 474-75 (App. Div. 2013) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

Similarly, we review a trial court's interpretation of a contract de novo. Serico v. Rothberg, 234 N.J. 168, 178 (2018). "A basic principle of contract

14

interpretation is to read the document as a whole in a fair and common sense manner." Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009). "[T]he terms of the contract must be given their 'plain and ordinary meaning.'" Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (quoting Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)). "Where the terms of an agreement are clear, we ordinarily will not make a better contract for parties than they have voluntarily made for themselves, nor alter their contract for the benefit or detriment of either . . . ." Carroll v. United Airlines, Inc., 325 N.J. Super. 353, 358 (App. Div. 1999). In other words, "[i]f the contract into which the parties have entered is clear, then it must be enforced as written." Serico, 234 N.J. at 178 (quoting In re County of Atlantic, 230 N.J. 237, 254 (2017)).

## A.

Plaintiff argues the Casualty Loss Provision in Section 11.3.1 of the Francise Agreement absolves it of liability for liquidated damages and recurring fees incurred after the February 2021 storm. It contends the storm damaged the Facility to the point it no longer made sense to repair it and caused it to operate with only fifty percent of the rooms available for rent until February 2022, when the Facility was condemned for fire code violations and structural damage and

fully closed prior to its demolition in March 2023. Plaintiff asserts Super 8 was aware of the storm damage because its inspector had visited the property, and the rooms were listed as "out of inventory" and blocked as unrentable on the SynXis reservation system, where it was noted the rooms were damaged by the storm. Plaintiff claims these SynXis entries were "a form of notice to Super 8."

Plaintiff further contends the fact it continued to operate the Facility for a year following the storm did not make the Casualty Loss Provision inapplicable. It reasons the court overlooked the fact the provision applies whenever less than seventy-five percent of the rooms are rentable, highlighting the Facility was operating with only half of its rooms available following the February 2021 storm.

The Casualty and Condemnation Clause of the Franchise Agreement under Section 11.3.1 stated:

> You will notify us promptly after the Facility suffers a [c]asualty that prevents you from operating in the normal course of business, with less than [seventy-five percent] of guest rooms available. You will give us information on the availability of guest rooms and the Facility's ability to honor advance reservations. You will tell us in writing within [sixty] days after the [c]asualty whether or not you will restore[,] rebuild[,] and refurbish the Facility to conform to [s]ystem [s]tandards and its condition prior to the [c]asualty. This restoration will be completed within 180 days after the [c]asualty. You may decide within the [sixty] days

after the [c]asualty and if we do not hear from you, we will assume that you have decided to terminate the [l]icense effective as of the date of your notice or [sixty] days after the [c]asualty, whichever comes first. If the [l]icense so terminates, you will pay all amounts accrued prior to termination and follow the post-termination requirements in Section 13. You will not be obligated to pay [l]iquidated [d]amages if the Facility will no longer be used as a transient lodging facility after the [c]asualty.

[(Emphases added).]

Additionally, under Section 17.3's Notice Clause:

Notices will be effective if in writing and delivered (i) by facsimile transmission with confirmation original sent by first class mail postage prepaid, (ii) by delivery service, with proof of delivery, or (iii) by first class, prepaid certified[,] or registered mail, return receipt requested, to the appropriate party ([i]v) at its address stated below or as it may otherwise designate by notice or ([v]) by such other means as to result in actual or constructive receipt by the person or office holder designated below. The parties may also communicate via electronic mail between addresses to be established by notice. . . .

The Casualty and Condemnation Clause unambiguously required plaintiff to "promptly" notify Super 8 of any casualty preventing it from operating in the normal course of business with less than seventy-five percent of the Facility's rooms available to rent. It also required plaintiff to notify Super 8 "in writing within [sixty] days" of the casualty whether it intended to restore, rebuild, and

17

refurbish the Facility. The clause obligated plaintiff to pay liquidated damages if the Facility could still be used as a transient lodging facility following the casualty.

Thus, given the February 2021 storm constituted a casualty causing plaintiff to operate the Facility with only fifty percent of its rooms available, it is undisputed plaintiff did not inform Super 8 "in writing within [sixty] days after the [February 2021 storm] whether or not [it] w[ould] restore[,] rebuild[,] and[,] refurbish the Facility." Rather, plaintiff continued operating the Facility for approximately one year after the storm prior to notifying Super 8 of the storm in writing in its February 15, 2022 termination later. Plaintiff admitted in its complaint it "did not give formal notice of the casualty loss to Super 8."

The trial court correctly found plaintiff failed to provide appropriate written notice to Super 8 under the Franchise Agreement. While "promptly" is not defined within the Franchise Agreement, its plain meaning and the Casualty and Condemnation Clause's additional requirement plaintiff inform Super 8 of its intent to rebuild mandated plaintiff to first notify Super 8 of the casualty itself. Although plaintiff referenced alleged inspections and notations in the SynXis reservation system that listed rooms as "out of inventory" due to storm damage, we conclude the court did not err in determining these methods did not

18

constitute a form of notice permitted under Section 17.3 of the Franchise Agreement. The court correctly concluded plaintiff's performance under the contract was not excused by the Franchise Agreement's Casualty and Condemnation Clause, and plaintiff was still required to pay the liquidated damages and recurring fees accrued prior to the February 2021 storm, plus prejudgment interest, pursuant to the Assignment and Assumption Agreement.

B.

Plaintiff also argues the trial court erred in finding the SynXis Agreement's Force Majeure Provision did not absolve it of liability. It contends the provision would be illusory if it did not apply to its payment obligations because payment is the only obligation it owes Super 8 under the SynXis Agreement. Plaintiff avers the provision is "at best ambiguous" and thus should be construed against Super 8 as the provision's drafter. It further contends the provision's reference to the exclusion of payment obligations does not mean those obligations will only be excused or delayed for the period of such delay; rather, because the Facility was demolished, the delay was permanent, and plaintiff is relieved of all payment obligations. Plaintiff also claims the court's finding of insufficient notice is against the weight of evidence.

A-1875-24

The Force Majeure Provision under Section 16.1 the SynXis Agreement provided:

> If performance by either [p]arty is delayed or prevented (<u>excluding the obligation to make payments under this [SynXis] Agreement</u>) because of strikes, inability to procure labor or materials[,] defaults of suppliers or subcontractors, delays or shortages of transportation[,] failure of power or communications systems, restrictive governmental laws or regulations[,] <u>weather conditions</u>, or other reasons beyond the reasonable control of the [p]arty, <u>then performance of such acts will be excused and the period for performance will be extended for a period equivalent to the period of such delay</u>.
>
> [(Emphases added).]

Section 15.1 of the SynXis Agreement stated: "All notices and other communications in connection with th[e SynXis] Agreement shall be in writing and shall be sent to the respective [p]arties . . . by registered or certified [] mail[,] postage prepaid, or by express courier service, service fee prepaid."

A force majeure clause "provides a means by which the parties may anticipate in advance a condition that will make performance impracticable." <u>Facto v. Pantagis</u>, 390 N.J. Super. 227, 231 (App. Div. 2007). The clause "conditions a party's duty to perform upon the non-occurrence of some event beyond its control and serious enough to interfere materially with performance." <u>Id.</u> at 232.

A-1875-24

Courts construe force majeure clauses narrowly. Hess Corp. v. ENI Petroleum US, LLC, 435 N.J. Super. 39, 47 (App. Div. 2014). For instance, only if the clause "specifically includes the event that actually prevents a party's performance will that party be excused." Id. at 47-48 (quoting Kel Kim Corp. v. Cent. Mkts, Inc., 519 N.E.2d 295, 296 (N.Y. 1987)) (finding a force majeure clause inapplicable because the contract failed to specify the specific source of natural gas the defendant would sell to the plaintiff, rather, only the price, quantity, and delivery point); see also Facto, 390 N.J. Super. at 228 (holding a force majeure clause that specifically identified a "power failure" as a circumstance that would excuse performance).

Pursuant to these principles, the trial court did not err in finding the SynXis Agreement's Force Majeure Provision neither absolved plaintiff of its obligation to pay Super 8 the recurring fees and liquidated damages owed under the Franchise Agreement nor excused plaintiff's performance. See Hess Corp., 435 N.J. Super. at 47. The clause unambiguously stated it did not apply to plaintiff's "obligation to make payments under th[e SynXis] Agreement." The provision's plain language only permitted a limited time extension for the duration of the event at issue for obligations under the SynXis Agreement.

Additionally, it is undisputed plaintiff failed to provide Super 8 with formal, written notice of the February 2021 storm pursuant to Section 15.1 of the SynXis Agreement. Even if plaintiff had provided Super 8 proper notice, the Force Majeure Provision would apply only to plaintiff's payment obligations under the SynXis Agreement and not the liquidated damages owed pursuant to the Franchise Agreement. Accordingly, we discern no error in the court's decision regarding this issue.

C.

Plaintiff claims the trial court erred in finding the entire purpose of the Franchise Agreement was not frustrated by the February 2021 storm and resulting fire code violations such that plaintiff was not relieved of liability. It asserts the "entire point" of the Franchise Agreement was for it to operate a Super 8 franchise and for Super 8 to collect fees from the operation, which was frustrated when the February 2021 storm damage caused the Facility to operate at only half-capacity until its demolition in 2023. Accordingly, plaintiff asserts the court erred in not excusing the non-payment of any amounts plaintiff allegedly owed Super 8.

Under the doctrine of frustration of purpose, a litigant must prove "the supervening event fundamentally has changed the nature of the parties' overall

A-1875-24

bargain." JB Pool Mgmt., LLC v. Four Seasons at Smithville Homeowners Ass'n, Inc., 431 N.J. Super. 233, 246 (App. Div. 2013). Frustration of purpose "arises when a change in circumstances makes one party's performance [virtually] worthless to the other, frustrating [their] purpose in making the contract." Id. at 246-47 (quoting Restatement (Second) of Conts., § 265 cmt. a (A.L.I. 1981)). "The frustration must be so severe that it is not fairly to be regarded as [within] the risks that [the party invoking the doctrine] assumed under the contract." Id. at 247 (second alteration in original) (quoting Restatement (Second) of Conts., § 265 cmt. a).

The trial court did not err in rejecting the frustration of purpose argument or in finding the doctrine did not absolve plaintiff of its financial obligations to Super 8. We affirm substantially for the reasons set forth in the court's written decision and add the following comments.

The terms of the Franchise Agreement and SynXis Agreement, through the Casualty Loss Provision and Force Majeure Provision, respectively, contemplated a weather event may prevent plaintiff from renting out all the Facility's rooms. It is undisputed plaintiff continued to operate the Facility at half-capacity for the year following the February 2021 storm, collecting revenue and receiving franchise benefits during that period. Additionally, plaintiff did

A-1875-24

not demonstrate the storm fundamentally altered the contract's purpose. Thus, we discern no error in the court's rejection of this argument.

D.

Plaintiff alternatively argues the trial court erred in its computation and award of damages. It notes although Super 8's summary judgment affidavit claimed plaintiff owed $220,282.92 in recurring fees and interest, as of October 10, 2024, Super 8's March 17, 2022 letter stated only $16,004.84 was owed as of that date, and it admitted recurring fees could not accrue after the Franchise Agreement was terminated on February 15, 2022. Furthermore, an itemized statement attached to Super 8's affidavit improperly included fees preceding plaintiff's purchase of the Facility, whereas another statement, which plaintiff contends properly limited recurring fees to those arising after its purchase, showed only $23,621.76 was owed. Thus, plaintiff argues the court erred because at best the outstanding fees were $122,852.27, not the $223,706.29 awarded by the court.

Plaintiff also contends Super 8 waived its right to payment of the $122,852.27 it allegedly owed by continuing to perform under the Franchise Agreement without ever demanding payment pursuant to the payment plan.

Thus, plaintiff asserts a material issue of fact exists regarding whether Super 8 waived its right to payment under the Assignment and Assumption Agreement.

Section 7 of the Franchise Agreement required plaintiff to pay Super 8 recurring fees in the form of a royalty fee equivalent to five percent of plaintiff's gross room sales while operating the Facility and a three percent system assessment fee. Section 7.3 provided interest was "payable on any past due amount payable to [Super 8] . . . at the rate of [one-and-one-half percent] per month or the maximum rate permitted by applicable law, whichever [wa]s less, accruing from the due date until the amount [wa]s paid. Interest [wa]s payable when [plaintiff] receive[d an] invoice."

Section 2 of the Assignment and Assumption Agreement provided plaintiff agreed "to pay $122,852.27 upon execution of th[e] [a]greement as part of the [p]ayment [p]lan," representing the outstanding recurring fees owed by Shirjivan. Importantly, Section 17.2 of the Franchise Agreement also, in pertinent part, provided:

> If we allow you to deviate from this [a]greement, we may insist on strict compliance at any time after written notice. <u>Our silence or inaction will not . . . establish a waiver</u>, consent, course of dealing, implied modification[,] or estoppel. All modifications, waivers, approvals[,] and consents of or under this [a]greement . . . must be in writing and signed by [Super 8's] authorized representative to be effective.

[(Emphasis added).]

Similarly, Section 16.9 of the SynXis Agreement stated:

> If either [p]arty fails to exercise any right or option at any time under th[e SynXis] Agreement, such failure <u>will not be deemed a waiver</u> of the exercise of such right or option at any other time or the waiver of a different right or option. <u>Termination of th[e SynXis] Agreement by either [p]arty will not waive [plaintiff]'s obligation to make any payments</u> to [Super 8] under th[e SynXis] Agreement.

[(Emphases added).]

Plaintiff does not challenge the court's calculation of liquidated damages, prejudgment interest, or attorneys' fees and costs; rather, it only contests the court's calculation of recurring fees owed under the Franchise Agreement and payment plan. However, plaintiff fails to raise an issue of material fact to establish the court erred in granting Super 8's motion for summary judgment. Its argument regarding Super 8's affidavit is unpersuasive, given the paragraph preceding Super 8's demand for $16,004.84 in the March 17, 2022 letter asserted a demand for $122,852.27 based on plaintiff's assumption of Shirjivan's outstanding recurring fees owed pursuant to the Assignment and Assumption Agreement as incorporated into the payment plan. Additionally, it is undisputed the recurring fees plaintiff owed continued to accrue interest pursuant to Section

26

7.3 of the Franchise Agreement, including up until the November 20, 2024 judgment.

Super 8 did not waive its right to collect plaintiff's outstanding payments. The Franchise Agreement and SynXis Agreement expressly provided Super 8's failure to demand payment would not be deemed a waiver of its right to do so. The court did not err in granting Super 8's motion for summary judgment or in calculating damages.

To the extent we have not specifically addressed any remaining arguments raised by plaintiff, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division